UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NORTHEAST BUILDERS SUPPLY | : | |
| & HOME CENTERS, LLC, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | 3:15-cv-00549-WWE |
| | : | |
| MEMBER INSURANCE AGENCY, INC., | : | |
| and | : | |
| PENNSYLVANIA LUMBERMENS | : | |
| MUTUAL INSURANCE COMPANY, | : | |
|     Defendants. | : | |

## MEMORANDUM OF DECISION
## ON PLAINTIFF'S MOTION FOR RECONSIDERATION

This is an action by an insured business against its insurance broker and its insurer after a fire destroyed retail and storage facilities containing personal property and equipment. The insurance policy at issue allegedly failed to provide adequate building, personal property, and equipment coverage and lacked coverage for "extra expense" or business income interruption.

Plaintiff Northeast Builders Supply & Home Centers, LLC, alleges (1) negligence, (2) misrepresentation, (3) breach of fiduciary duty, and (4) violation of the Connecticut Unfair Trade Practices Act against defendants Member Insurance Agency, Inc., and Pennsylvania Mutual Insurance Company ("PLM").

Plaintiff has moved for reconsideration of the Court's decision on summary judgment on all counts as to defendant PLM and on the CUTPA claims against both defendants. For the following reasons, plaintiff's motion for reconsideration will be granted.

**Agency Theory Claims**

The Court granted summary judgment in favor of PLM, the insurer, on all counts against it but allowed claims against Member, the broker, to proceed. Plaintiff argues that the Court

1

overlooked material facts genuinely in dispute as to whether Member was the agent of PLM and, thus, whether PLM may be vicariously liable for the acts of Member. In each of its four counts against PLM, plaintiff alleged that Member was acting as PLM's agent. As such, plaintiff contends PLM, as principal, is vicariously liable for the acts of Member, which the Court found sufficient to merit a trial.

> Although agency is normally a question of fact, its existence or nonexistence may be determined as a matter of law. Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.

Macomber v. Traveleres Property & Casualty Corp., 261 Conn. 620, 639 n. 12 (2002) (internal citation omitted). A broker is considered the agent of *the insured* for purposes of negotiating a policy with an insurance company. Ursini v. Goldman, 118 Conn. 554, 173 A. 789, 791 (1934); Mishiloff v. American Central Ins. Co., 102 Conn. 370, 379 (1925). Considering the traditional agency relationship between plaintiff (the insured) and Member (its broker), the Court was not persuaded that Member could be simultaneously acting as the agent of PLM (the insurer). Indeed, "it is important to note that an independent insurance agent does not become an agent of an insurer simply by collecting and remitting premiums for the insurer's ultimate benefit … To hold otherwise would effectively make agents out of all independent insurance brokers." Kenneth v. One Beacon Ins., 2005 WL 3047226, at *4 (Conn. Super. Ct. Oct. 24, 2005); see also Hallas v. Boehmke & Dobosz, 239 Conn. 658, 675 n. 16 (1997). Under this general framework, for purposes of securing the insurance at issue in this case, Member would be the agent of plaintiff, not of PLM. Based on this framework, the Court, at summary judgment, placed an inappropriate burden on plaintiff of demonstrating that the relationship between Member and PLM was exceptional.

The Supreme Court of Connecticut has instructed that "[t]he existence of agency is a question of fact to be determined by the trier of fact." Gateway Co. v. DiNoia, 232 Conn. 223, 240 (1995). Moreover, "[the insurer] carries the burden of demonstrating that there is no genuine issue

as to any material fact in regards to [the broker] not being an agent of [the insurer] for purposes of vicarious liability." One Beacon, at *4. As in One Beacon, PLM's evidence "is not enough to show that there are no genuine issues of material fact that an actual or implied agency relationship is nonexistent, and that there was no apparent authority for [Member] to act on [PLM's] behalf." Id. For example, when asked through interrogatory whether it was authorized to bind insurance coverage without the prior approval of PLM, Member declined to answer the question, instead offering boilerplate objections such as "any answer thereto is not calculated to the discovery of admissible or relevant evidence." Moreover, plaintiff's experts opine that the relationship between PLM and Member was an agency relationship, unusual within the insurance industry. Mr. Stein testified that in 25 years as a broker, he had "never seen a relationship between the carrier and [] the broker override a relationship between the insured and the broker, and [] felt in this case that's what was happening."

Plaintiff may be unlikely to persuade a jury under its theory of vicarious liability, as it was previously unable to persuade this Court. Nevertheless, upon reconsideration in light of Connecticut precedent, the Court cannot find that no reasonable jury could find an agency relationship between Member and PLM. Accordingly, the Court will revive the claims against PLM based on plaintiff's agency theory of liability. Plaintiff will be left to its proof at trial.

### CUTPA Claims

Plaintiff argues that the Court should reconsider its decision granting summary judgment in favor of defendants on the CUTPA counts, namely because plaintiff submits it has alleged more than mere professional negligence. Neither defendant responded to plaintiff's motion on the issue its CUTPA claims . On reconsideration, the Court agrees that defendants' actions, as alleged, could be characterized as moving beyond mere professional negligence and into the entrepreneurial realm. See Janusauskas v. Fichman, 264 Conn. 796, 809 (2003) (finding that CUTPA is applicable only to

3

entrepreneurial aspects of a professional practice, such as the solicitation of business and billing practices, rather than to the competence and strategy employed by a defendant). In the instant case, although defendants' alleged actions can be properly characterized as negligent, they also involve the alleged solicitation of business involving misrepresentation. Indeed, C.G.S.A. § 38a-816 defines deceptive acts and practices in the business of insurance to include "[m]aking, issuing or circulating, or causing to be made, issued or circulated, any estimate, illustration, circular or statement, sales presentation, omission or comparison which: (A) Misrepresents the benefits, advantages, conditions or terms of any insurance policy." Such conduct, explicitly prohibited by CUIPA, could support allegations of CUTPA violations. Accordingly, the Court will revive the CUTPA claims.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for reconsideration is GRANTED. The Court vacates its prior ruling granting summary judgment [ECF No. 121]. Accordingly, the Court finds that plaintiff is entitled to have a jury consider its claims, so the case will be set down for trial. The parties shall submit proposed trial dates, including estimated trial length by July 26, 2019.

Dated this 12th day of July, 2019, at Bridgeport, Connecticut.

/s/Warren W. Eginton
WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE